**O**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lusa Lighting, Int'l, Inc. , | CASE NO. SACV 07-674-DOC (MLGx) |
| Plaintiff(s), | |
| v. | O R D E R GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| America Elex, Inc., et al, | |
| Defendant(s). | |

Before the Court is Plaintiff Lusa Lighting Int'l., Inc.'s Motion for Summary Judgement ("Plaintiff's Motion") and Defendants America Elex, Inc., et al ("Defendants") Motion for Summary Judgement ("Defendants' Motion"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court GRANTS, IN PART Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Lusa Lighting ("Plaintiff") is a designer and importer of lighting fixtures. On February 9, 1998, Plaintiff entered into an Exclusive Manufacturing Agreement ("EMA") with

Defendants.  Under the EMA, Defendants agreed to manufacture and sell to Plaintiff specific lighting products created by Plaintiff.  Defendants allegedly agreed that during the term of the EMA and for six months thereafter, Defendants would not produce the products manufactured for Plaintiff, or any variation thereof, for any other person.  If Defendants failed to comply with this provision, the EMA specified that Plaintiff would be entitled to damages as well as injunctive relief.  Simultaneously to entering the EMA, Plaintiff and Defendants entered into a non-disclosure agreement ("NDA").

Plaintiff and Defendants operated under the EMA and NDA for several years.  On December 10, 2002, Plaintiff received a patent for a high voltage, under-cabinet lighting fixture (the "'413 patent").  Around 2005, it became evident that there were problems with an electronic transformer ("the transformer") that Defendants had included with Plaintiff's product.  Defendants refused to replace the transformer.

Plaintiff later discovered that Defendants had been manufacturing and attempting to sell three versions of high voltage under-cabinet lighting fixtures that allegedly infringed on Plaintiff's patents and/or the EMA.  Further, Plaintiffs discovered that, with respect to the products that contained the defective transformer, Defendants had allegedly manufactured the same products for themselves, to sell to third parties, with a more durable transformer.  Plaintiff also discovered that Michael Chen ("Chen"), the owner and general manager of America Elex, Inc. ("AE"), had obtained a Chinese design patent that allegedly covers the same product protected in the U.S. by the '413 patent, and had attempted to use the patent to interfere with a contract that Plaintiff had with another manufacturer.[1]  Plaintiff brought the current suit on June 7, 2007, seeking an injunction, "all damages," attorneys' fees and costs, special damages, punitive damages, and exemplary damages.

On August 29, 2008 Plaintiff and Defendants filed their respective Motions for Summary Judgment.  Plaintiff moves for a finding, on summary judgment that (1) there are no triable

---

[1] Michel Chen acquired this patent for a wholly or substantially owned subsidiary of AE:  DJL Electric Devices (Shanghai) Co., Ltd.

2

issues of material fact that AE, and companies owned and controlled by AE and Chen, have manufactured, promoted the sale of, sold and continue to threaten to sell high voltage under-cabinet lighting fixtures that embody all of the elements of one or more claims of United States Patent No. 6,491,413 (the "413 patent") and (2) partial summary judgment re: counts 1 through 8 of Defendants' counterclaims.  Defendants move for summary judgment of patent unenforceability for inequitable conduct.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).  "When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806-07 (Fed. Cir. 1999)."

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *see also Anderson*, 477 U.S. at 248-49.  Furthermore, a party cannot create a genuine issue of material

1   fact simply by making assertions in its legal papers.  There must be specific, admissible evidence

2   identifying the basis for the dispute.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter*

3   *Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).  The Supreme Court has held that "[t]he

4   mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on

5   which the jury could reasonably find for [the opposing party]."  *Anderson*, 477 U.S. at 252.

**III. DISCUSSION**

**A. Plaintiff's Motion for Summary Judgment for Patent Infringement**

8          Plaintiff first seeks summary judgment on the ground that there are no triable issues of

9   material fact that Defendants have manufactured, promoted the sale of, sold and continue to

10  threaten to sell high voltage under-cabinet lighting fixtures that embody all of the elements of

11  Claim No. 1 of the '413 patent ("Claim 1").  Specifically, Plaintiff alleges that several different

12  types of lighting fixtures (the "Accused Products") contain each limitation of Claim 1 of the

13  '413 patent, either literally or under the Doctrine of Equivalents ("DOE").

14         Patent infringement analysis involves two steps: (1) an interpretation of the asserted

15  claims and (2) a comparison of the claims to the accused device.  *Markman v. Westview*

16  *Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 116 S. Ct.

17  1384 (1996).  That is, the Court must determine whether the product at issue contains each

18  limitation of the properly construed claim(s), either literally or by a substantial equivalent.  *R.F.*

19  *Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1266 (Fed. Cir., 2003).  Thus, an

20  infringement analysis is amenable to summary judgment, even though the analysis involves both

21  issues of law and questions of fact, if the court finds that there are no genuine issues of material

22  fact.  *Phonometrics Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1463-64 (Fed. Cir. 1998).

**(1) Accused Product in Exhibits D-G**

**a. Literal Infringement**

25         In order to literally infringe a claim, each of the claim limitations must be found in the

26  accused product (*i.e.*, "the properly construed claim [must read[] on the accused device

27  exactly").  *Strattec Sec. Corp. v. General Automotive Specialty Co., Inc.*, 126 F.3d 1411 (Fed.

28  Cir. 1997).  "A determination of infringement, both literal and under the doctrine of equivalents,

1    is a question of fact." *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir.

2    2001).  However, the question of infringement becomes a question of law where the parties do

3    not dispute any relevant facts regarding the structure or composition of the accused device.

4    *Athletic Alternatives v. Prince Mfg.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).  "Thus, a literal

5    infringement issue is properly decided upon summary judgment when no genuine issue of

6    material fact exists, in particular, when no reasonable jury could find that every limitation recited

7    in the properly construed claim either is or is not found in the accused device." *Bai v. L & L

8    Wings*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

9        Plaintiff argues that every limitation recited in the Claim is found in the Accused

10   Products.  In so arguing, Plaintiff notes that there are only two structural differences between the

11   elements defined in Claim 1 and the elements of the Accused Product in Exhibits D-G, namely:

12   (1) "the thickened portion of the base of the Accused Product is shaped as a four-pointed star

13   [instead of] as a disc" and (2) "the gap between the reflector and the housing of the Accused

14   Product is created by 'dimples' extending from the reflector [instead of] projections extending

15   from the housing."  Plaintiff goes on to state that the '413 patent contains no limitations

16   regarding geometrical shape of the thickened portion of the base.   However, Plaintiff admits that

17   the '413 patent *does* contain limitations regarding the gap between the reflector and the housing.

18   Further, in its reply, Plaintiff admitted that infringement of Claim 1 of the '413 patent by the

19   Accused Products could only be found by applying the Doctrine of Equivalents ("DOE"). Thus,

20   issues of material fact clearly remain as to said projections, which cannot be summarily

21   dismissed as *literally* infringing on the '413 patent.

22                    **b. Doctrine of Equivalents ("DOE")**

23        Under the doctrine of equivalents, a patent holder is able to claim equivalence for "those

24   insubstantial alterations that were not captured in drafting the original patent claim but which

25   could be created through trivial changes."  *Festo v. Shoketsu Kinzoku Kogyu Kabushiki*, 535

26   U.S. 722, 730, 122 S. Ct. 1831 (2002).  A particular element in the accused product is equivalent

27   to a limitation in the claim if the differences between them are insubstantial.  *AquaTex Indus. v.

28   Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005).  The Court's analysis in this inquiry

focuses on whether the element in the accused product "performs substantially the same <u>function</u> in substantially the same <u>way</u> to obtain the same <u>result</u> as the claim limitation." Id. (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S. Ct. 854 (1950)) (internal quotation omitted)(emphasis supplied).  The doctrine of equivalents thus generally applies where the accused device incorporates only an insubstantial change that adds nothing of significance to the patented invention.  *Valmont Indus. v. Reinke Mfg. Co., Inc*., 983 F.2d 1039, 1043 (Fed. Cir. 1993).

A claim of infringement under the doctrine of equivalents can be resolved on summary judgment where "no reasonable jury could determine two elements to be equivalent."  Id. at 1353-54 (quoting Warner-Jenkinson 520 U.S. 17, 39 n.8, 117 S. Ct. 1040 (1997)).  However, summary judgment of non-infringement under the doctrine of equivalents is a "high hurdle," "requiring delicate balancing of many factual components."  *Vehicular Techs. Corp. v Titan Wheel Intern., Inc*., 212 F.3d 1377, 1381 (Fed. Cir. 2000).  "Because infringement under the doctrine of equivalents often presents difficult factual determinations, a summary conclusion that a reasonable jury could not find infringement is often illusive."  *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1360 (Fed. Cir. 2002); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609-10, 70 S. Ct. 854 (1950)("a finding of equivalence is a determination of fact . . . final determination requires a balancing of credibility, persuasiveness and weight of evidence.").

Plaintiff argues that the following difference between the Accused Product and the elements defined in Claim 1 is insubstantial:  "the gap between the reflector and the housing of the Accused Product is created by 'dimples' extending from the reflector [instead of] projections extending from the housing."  In support of this argument, Plaintiff notes that the only difference between the "dimples" in the Accused Product and the "projections" in the '413 patent is the place of connection of the projections (*i.e.*, the projections are formed on the reflector instead of on the housing), which does not entail differing functions.

Defendants counter that what Plaintiff referred to as a "dimple" is actually a "recessed screw hole," which serves an inherently different function and purpose than the "projections" in

1    Claim 1.   That is, (1) in fastening two parts together, the screw holes form a cavity that, in turn,

2    allows the flat-head screw heads to be flush with the surface and (2) the screw holes allow the

3    reflector to be in direct contact with the housing's edge, thereby preventing a tight closing

4    between the reflector edge and the housing flange.   In its reply, Plaintiff puts forth the March 18,

5    2008 declaration of Robert John Anders (an expert witness for the Defendants), wherein Mr.

6    Anders admitted that there is no limitation in Claim 1 that precludes contact between the housing

7    the reflector.   Deposition of Robert John Anders ("Anders Dep."), 48:10-13.   Further, Plaintiff

8    argues that the Glenn Russel Stevick Declaration - another declaration relied upon by

9    Defendants in opposing Plaintiff's patent infringement summary judgment motion - should be

10    excluded as redundant expert testimony.

11         Regardless of the potential redundancy of the Stevick Declaration and the facts admitted

12    in the Anders Deposition, Plaintiff has failed to resolve all material disputes in their favor,

13    particularly given the high bar imposed to finding summary judgment under the DOE.   First,

14    Defendants demonstrate that issues of material fact are still at issue by arguing that – because

15    Claim 1 limits the reflector to be "seating" on something (*i.e.*, the projections)  and because the

16    "recessed screw hole" in the Accused Product causes it not to be "seating" on projections – the

17    DOE is not met.   Defendants cite the Anders Deposition (in addition to the Stevick Declaration),

18    in support for this argument.   Plaintiff does not respond by proving that no material fact exists as

19    to the "seating" issue; rather, Plaintiff argues that Mr. Anders's testimony should be "considered

20    in light of the paucity of his educational or professional experience in the subject matter of the

21    '413 patent and the construction and application of patent claims."   Pl.'s Reply in Support of

22    Mot. 9-10.   Admittedly, the "trial judge must ensure that any and all scientific testimony or

23    evidence admitted is not only relevant, but reliable."   *Daubert v. Merrell Dow Pharmaceuticals,*

24    *Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786 (1993).   However, even if the Anders Deposition were

25    to be excluded, the Stevick Declaration would remain and Plaintiff admits that said declaration

26    deals with "precisely the same subjects" as the Anders Declaration.   Pl.'s Reply in Support of

27    Mot. 10:19.

28         Further, Defendants argue that the DOE is not met because the use of recessed screw

1    holes instead of "projections" was foreseeable at the time that Claim 1 was drafted (and, further,

2    that Lusa itself had used recessed screw holes in its own low voltage under-cabinet lighting

3    produced in 1998).  *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1425 (Fed.

4    Cir. 1997)(holding that the patentee should seek protection for foreseeable alterations of its

5    claimed structure or lose the ability to cover such alterations through the DOE).  Defendants rely

6    on the September 6, 2008 Chen declaration in support of their argument that said screw holes

7    were routine in the lighting industry in 1998 and prior to 1998.  Defs.' Opp. to Mot. 7:7-9.

8    While Plaintiff argues that Chen has intentionally misrepresented several material facts in his

9    declarations, Plaintiff does not dispute Chen's declarations pertaining to the use of screw holes

10   in the lighting industry.

11         For the above reasons, Plaintiff's summary judgment motion as to the Accused Product in

12   Exhibits D-G, inclusive, is hereby DENIED.

13                    **(2) Accused Products in Exhibits S and T**

14         The lighting fixtures in Exhibits S and T differ from the lighting fixture in Exhibits D-G

15   only with respect to the structure used to define the gap between the reflector flange and the

16   housing flange.  Plaintiff argues that Exhibit S literally infringes on Claim 1 of the '413 patent

17   because, in stark similarity to the '413 patent,[2] it contains "'a plurality of projections extending

18   from an edge of the house'" and because "the reflector would be 'seeding [sic] on a plurality of

19   projections to define a gap between the reflector and the housing.'"  Pl.'s Mot. 18.  Similarly,

20   Plaintiff argues that Exhibit T literally infringes on Claim 1 of the '413 patent because it

21   contains "four projections on [its] housing [that] are intended to support the flange of the

22   reflector to maintain the gap between the reflector flange and the housing outer edge when the

23   fixture is mounted for its intended use."  Pl.'s Mot. 18.

24   _____

25         [2]The relevant language of Claim 1 of the '413 patent states: "What is claimed is a
     high-voltage lighting fixture, comprising a housing defining an open end that opposes a
26   base having at least a thickened portion, the base defining a plurality of openings in a
     portion opposing the open end, and a plurality of projections extending from an edge of
27   the housing at the open end; reflector defining a dished cavity and seating on the
     projections to define the gap between the reflector and the housing..."
28

As to Exhibit S, Defendants argue that the height of the studs in Exhibit S is shorter than that of the screw holes, thereby preventing the reflector from seating on the studs as required by Claim 1.  Similarly, as to Exhibit T, Defendants argue that – due to the fact that the "gap" is formed by the recessed screw holes of the reflector and the fact that the height of the studs is shorter than that of the screw holes – the reflector defining a dish cavity in Exhibit T does not "seat[] on" the studs as required by Claim 1.  Defendants support their arguments by citing the Anders Declaration and the Stevick Declaration.  Plaintiff counters Defendants' arguments by noting that the opinions given by Mr. Anders on these issues are expressly contradicted by his prior deposition testimony.  However, Plaintiff doesn't cite any contradictions in the Stevick Declaration.

Additional material factual disputes further demonstrate that Plaintiff has not presented a viable case for summary judgment.  Claim 1 of the '413 patent requires that the thickened portion in the housing base be in alignment with the lamp bulb.  Plaintiff's expert testified that the Accused Products' light bulbs *are* in alignment with the thickened portion of their housing base while Defendants' experts testified that the Accused Products' light bulbs *were not* in alignment.  Plaintiff seeks to refute the Anders Declaration on this issue by noting that Anders has conceded that his definition of "alignment" is narrower than that in Webster's New Collegiate Dictionary.  Regardless of the proper definition of "alignment" to be used, Plaintiff has not presented any arguments for refuting Stevick's testimony on this issue other than the fact that his testimony was cumulative and that Plaintiff's expert has found errors in his reasoning.  Moreover, because the parties' experts have differences of opinion regarding the issues, a sufficient controversy as to genuine issues of material fact exists in the instant action.

### (3) Defendants' Cross-Motion for Summary Judgment

Defendants present a cross-motion for summary judgment for non-infringement, arguing that Claim 1 is invalid.  Defendants state that the specification of the '413 patent recites the fact that embodiments lacking insulating pads resulted in temperatures beyond the test standards.  Defendants go on to note that Claim 1 does not contain an insulating pad.  Defendants argue that the embodiment of Claim 1 is therefore inoperable and, thus, invalid.  35 U.S.C. §101

("Whoever invents or discovers any new **and useful** process, machine, manufacture, or composition of matter, or any new **and useful** improvement thereof, may obtain a patent therefor....")(emphasis supplied).  Plaintiff counters that the specification of the '413 patent is much broader than Defendants allege it to be.[3]  Further, Plaintiff argues that inoperability cannot be established based on an imperfect specification, citing *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 762 (Fed. Cir. 1984).  Because genuine issues of material fact exit in this dispute, summary judgment is inappropriate for either party.

### (4) Outcome

Because Plaintiff has not demonstrated that no reasonable jury could find that every limitation recited in the properly construed claim is found in the accused device, Plaintiff's summary judgment motion for infringement is DENIED.  Defendants cross-motion for summary judgment is also DENIED.


## B. Plaintiff's Motion for Partial Summary Judgment Re: Counts 1 Through 8 of Counterclaim (the "Second Motion")

Plaintiff's Second Motion accuses Defendants of alleging "demonstrably false" accusations in their counterclaims in an effort to provide Defendants with "leverage in this litigation."  More specifically, Defendants argue that oral contracts were formed between Counter-Claimant Chen and Counter-Defendant Sanford Benensohn[4] ("Benesohn") during private conversations.  However, there is little if any evidence of said oral contracts.  There were no witnesses to said conversations and there are no supporting documents for said conversations.  Plaintiff's argue that counterclaims 1-7 should fail because (1) said oral contracts were never

---

[3] The specification states; "The present invention provides an under-cabinet lighting fixture for surface and recessed mounting and operating high line voltage for increased illumination and controlled transfer of the heat communicated therefrom..." '413 patent, Column 2, Ins., 53-56.

[4] Sanford Benensohn is the owner of Lusa Lighting Int'l., Inc.  Michael Chen is the owner of America Elex, Inc.

1  formed and counterclaims 1-8 stem only from said contracts and (2) even if said contracts

2  existed, they would be unenforceable for the plethora of reasons outlined below.

3  ## (1) Counterclaims 1, 2, 3 and 8

4  Counterclaims 1,2,3 and 8 arise from an alleged oral contract that was formed between

5  Chen and Benesohn in 1998.  Defendants argue that, under said oral contract, Plaintiff agreed to

6  provide Defendants with a 5% commission on each of Plaintiff's purchase orders (the

7  "Commission") in exchange for Defendants' agreements to find manufacturers to produce

8  Plaintiff's products, conduct quality control, and find an exporter to export Plaintiff's products

9  from China to the United States (the "Commission Contract").  Regardless of whether said

10  contract was actually formed, Plaintiff has presented affirmative defenses to each of the

11  respective counterclaims at issue, thereby making summary judgment on Counterclaims 1,2,3

12  and 8 proper.

13  ## (a.) Counterclaim 1

14  Counterclaim 1 alleges that Plaintiff fraudulently promised to pay the Commission.

15  However, under Code of Civ. Proc. §338(d) the statute of limitations for fraud is three years

16  from "the discovery, by the aggrieved party, of facts constituting fraud."  In this case,

17  Defendants have admitted that, at least by 2002, Chen "suspect[ed]" that Defendants would not

18  receive the Commission.  Deposition of Michael Chen ("Chen Dep.'"), 150:25-157:21.

19  Therefore, Defendants had until 2005 to bring their fraud claim, yet this lawsuit was not brought

20  until 2007.

21  Defendants argue that the statute of limitations should be tolled due to the fact that

22  Plaintiff continued to make a false promise to pay the Commission after 2002.  "Statutes of

23  limitations are not so rigid that under certain circumstances principles of equity and justice will

24  not allow them to be extended or tolled." *Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d

25  399, 411.  However, the Court is not convinced that the circumstances of this case are so

26  exceptional as to require Plaintiff to be estopped from asserting the statute of limitations.  The

27  representations that were allegedly made by Plaintiff regarding the Commission would not have

28  induced a reasonable person to rely on them after 2002, as is required in order for the doctrine of

equitable estoppel to apply.  *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 655 (2003).  As indicated earlier, Chen admitted that the alleged oral contract regarding the Commission had been repeatedly broken for at least four years – such circumstances hardly induce reliance on future promises to pay the Commission.  Therefore, summary judgment as to counterclaim 1 is hereby GRANTED.

### (b.) Counterclaim 2

Counterclaim 2 alleges that Plaintiff negligently misrepresented its promise to pay the Commission.  In their opposition to Plaintiff's summary judgment motion, Defendants simply state that they oppose granting summary judgment as to counterclaim 2 "for the same reasons and basis as stated in the above section relative to fraud."  However, in Defendants' section regarding fraud, they outline the factors necessary to make out a prima facie case for fraud without making any argument as to negligent misrepresentation.  Further, as Plaintiff points out, it would be quite difficult, if not impossible, to put forth a viable claim that Plaintiff was negligent in setting forth its own intention.  Therefore, summary judgment as to counterclaim 2 is hereby GRANTED.

### (c.) Counterclaim 3

Counterclaim 3 alleges that Plaintiff breached its oral contract to pay Defendants the Commission.  Under Code of Civ. Proc. §339 the statute of limitations for breach of an oral contract is two years.  Once again, Defendants argue that the statute of limitations should be tolled due to Plaintiff's alleged reaffirmation of the contract until May 2006.  Notwithstanding the dearth of evidence of the original, oral Commission Contract that was allegedly formed in 1998, Defendants' sole piece of evidence of this contract's reaffirmation comes from the deposition of Michael Chen.

As noted above, the moving party in a summary judgment motion bears the initial burden of demonstrating that no genuine issues of material fact exist for trial.  *Celotex,* 477 U.S. *at* 317.  Once the moving party meets this burden, the burden shifts to the non-moving party to designate "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FED. RULE CIV. P. 56(e)).  Furthermore, where the non-moving party bears the burden of proof at trial - as is the

case with regard to Defendants' breach of contract claim - the non-moving party must make "a showing sufficient to establish the existence of an element essential to that party's case." *Id*. at 317.  While this does not constitute a requirement that Defendants put forward specified kinds of materials, it *does* require a showing beyond a mere scintilla of evidence.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251, 106 S.Ct. (1986).  Said differently, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997))(citations omitted); *Nillson v. Mesa*, 503 F.3d 947, 951 n.2 (9th Cir. 2007).  Because Defendants' opposition to this summary judgment presents woefully insubstantial evidence regarding Plaintiff's alleged reaffirmation of the oral contract at issue, summary judgment as to counterclaim 3 is hereby GRANTED.

### (d.) Counterclaim 8

Counterclaim 8 alleges that Plaintiff was unjustly enriched when it failed to pay amounts due to Defendants under the Commission Contract.  Defendants do not dispute this allegation.  Accordingly, pursuant to Local Rule 7-12, Plaintiff's summary judgment motion as to counterclaim 8 is hereby GRANTED.

### (2) Counterclaims 4,5 and 6

Counterclaims 4,5 and 6 are based on an alleged oral contract, formed in 2002 between Plaintiff and Defendants, under which Defendants would be required to place all of their orders with America Elex's factory once America Elex set up a Chinese factory (the "Chinese Factory Agreement").  As outlined below, Plaintiff has put forth several procedural bars to Defendants' counterclaims (while also arguing that the Chinese Factory Agreement was never entered into). The evidence that the Chinese Factory Agreement was concluded is quite weak.  Even without determining whether the alleged contract was ever entered into, summary judgment as to Defendants' counterclaims is proper based on the procedural grounds outlined below.

### (a.) Counterclaim 4

In counterclaim 4 Defendants allege that Lusa Lighting fraudulently represented to Chen that, if America Elex built a Chinese factory, Lusa Lighting would place more orders with

America Elex.  Further, Defendants allege that it was in reliance on this fraudulent promise that Defendants formed a new entity - DJL Electric Devices (Shanghai) Co. - to run and construct a Chinese factory.  However, Plaintiff did not increase its orders with Defendants, as allegedly promised.

In order to present a viable claim of fraud, a party must present, *inter alia*, evidence of damages.  *See, e.g., South Tahoe Gas Co. v. Hofmann Land Improvement Co.*, 25 Cal. App. 3d 750, 765 (1972).  In this case, the only damages that Defendants claim arose from Plaintiff's fraudulent misrepresentations are a loss of profits and nominal damages.  Indeed, Defendants cannot and do not claim reliance damages, as there is at least one outstanding offer to purchase Defendants' interest in DJL at cost.  Chen Dep., 355:9 - 357:15.  This leaves Defendants without the possibility of making a viable fraud claim, as neither nominal damages nor loss of profits satisfy the element of damages in a fraud claim.  *See, e.g., Building Permit Consultants, Inc. v. Mazur*, 122 Cal. App. 4th 1400, 1415 (2004); *Philipson & Simon v. Gulsvig,* 154 Cal. App. 4th 347, 364 (2007)(citing *Buttram v. Owens-Corning Fiberglas Corp*., 16 Cal.4th 520, 531, fn. 4, (1997)).  As follows, summary judgment is as to counterclaim 4 is hereby GRANTED.

### (b.) Counterclaim 5

In counterclaim 5, Defendants argue that Plaintiff negligently misrepresented its intent to perform on the Chinese Factory Agreement.  Defendants argue that counterclaim 5 should be sustained for "substantially the same reasons and bases as stated in the above section relative to fraud re: a Chinese factory."  Def.'s Opp. to Mot. 17:10-17:13   However, Defendants' section on the alleged fraud involved in the Chinese Factory Agreement merely goes through each of the five elements necessary to make out a claim of fraud or deceit, without putting forth any reasons why Defendants' counterclaim should survive on the different legal theory of negligent misrepresentation.  As noted when discussing counterclaim 2 it is, in fact, difficult to conceive of a cogent argument that Plaintiff represented its intentions incorrectly and was negligent in failing to discern that it its intentions were incorrect.  Because Defendants have not provided a substantive opposition to Plaintiff's motion for summary judgment regarding counterclaim 5 - and because Plaintiff has sustained its burden of pointing out why no genuine issue of material

1  fact exists for trial - summary judgment is hereby GRANTED as to counterclaim 5.

2                            **(c.) Counterclaim 6**

3        In counterclaim 6, Defendants allege breach of contract based upon the Chinese Factory

4  Agreement.  This counterclaim fails under the Statute of Frauds, which requires oral contracts to

5  be in writing if they cannot be performed within one year.  Civil Code §1624(1).  Defendants

6  counter that the oral contract was "continuously reaffirmed from June 2004 through May 2006."

7  Def.s' Opp. to Mot. 17:19-17:20.  Even assuming that the Chinese Factory Agreement was

8  "reaffirmed," it required performance through 2008 and thus could not be performed within one

9  year.  Summary judgment as to counterclaim 6 is hereby GRANTED.

10                            **(3) Counterclaim 7**

11       Counterclaim 7 asserts that a number of purchase orders constitute accounts stated

12  between Plaintiff and Defendants.  There are significant factual disputes between the two parties

13  as to the agreements that were made regarding payment, the claims that were assigned, etc.  Yet,

14  in order to recover under the theory of an account stated there must be an *agreement* between the

15  parties as to the amount due from the debtor to the creditor.  Indeed, "[a]n account stated is an

16  agreed balance of accounts."  *Perry v. Schwartz*, 219 Cal.App.2d 825, 829 (1963).  While this

17  agreement may be implied from the circumstances, *Zinn v. Fred R. Bright Co.*, 271 Cal.App.2d

18  597, 600 (1969), the parties have presented such significant disputes regarding the amounts in the

19  various invoices at issue that no reasonable jury could conclude that the parties impliedly agreed

20  to a balance of accounts.  Summary judgment as to counterclaim 7 is hereby GRANTED.

21                            **(4) Outcome**

22       For the reasons outlined above, Plaintiff's summary judgment motion as to Counterclaims

23  1-8 is hereby GRANTED.

24

25  **C. Defendants' Motion for Partial Summary Judgement of Patent Unenforceability for**

26  **Inequitable Conduct**

27       Defendants argue that the '413 patent is unenforceable.  More specifically, Defendants

28  allege that Plaintiff's procurement of the '413 patent was "tainted with fraud" due to Plaintiff's

1  inequitable conduct during the prosecution of the '413 patent.  Defendants argue that Benensohn

2  withheld (1) prior art containing the central structural elements of the invention in the '413 patent

3  (the "Prior Art") as well as (2) an adverse test result – despite an affirmative duty to disclose said

4  Prior Art and test result to the United States Patent and Trademark Office ("PTO").

5  "Applicants for patents, including their patent attorneys, are required to prosecute patent

6  applications in the PTO with candor, good faith, and honesty." *Elk Corp. v. GAF Bldg. Materials*

7  *Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178

8  (Fed. Cir. 1995) and 37 C.F.R. § 1.56).  "Inequitable conduct resides in failure to disclose

9  material information, or submission of false material information, with an intent to deceive, and

10  those two elements, materiality and intent, must be proven by clear and convincing evidence."

11  *Kingsdown Med. Consultants Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) (citations

12  omitted); accord *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1573-74

13  (Fed. Cir. 1991).

14  **(1) Prior Art**

15  For the reasons outlined below, Defendants have failed to dispense with genuine issues of

16  material fact regarding the Prior Art's materiality as well as whether the Plaintiff intentionally

17  withheld the Prior Art.

18  **(a.) Materiality**

19  Two tests may be used to determine whether withheld information is material.  Under 37

20  C.F.R. § 1.56(b) (2006) ("Rule 56") information is material as to patentability when it is:

21  not cumulative to information already of record or being made of record in the application,

22  and (1) [i]t establishes, by itself or in combination with other information, a prima facie case of unpatentability of claim; or (2) [i]t refutes, or is inconsistent with, a position the

23  applicant takes in: (i) [o]pposing an argument of unpatentability relied on by the Office, or (ii) [a]sserting an argument of patentability.

24  The second test comes from *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1316

25  (Fed. Cir. 2006), wherein the Federal Circuit stated that the standard for materiality laid out in 37

26  C.F.R. § 1.56(b) (2006) did "not supplant" the "reasonable examiner" standard set out in 37

27  C.F.R. § 1.56(a)(1991).  Under the "reasonable examiner" standard, "information is material

28  where there is a substantial likelihood that a reasonable examiner would consider it important in

1   deciding whether to allow the application to issue as a patent."  37 C.F.R. § 1.56(a) (1991).

2                                    1. Cumulative

3          Defendants argue that Benensohn failed to disclose Prior Art which was material because,

4   *inter alia,* it was not cumulative.  More specifically, Defendants argue that (1) the central

5   structural element of both the '413 patent and Benensohn's Prior Art was an "air pathway" and (2)

6   that every structural element of the "air pathway" recited in the '413 patent is found in the

7   undisclosed Prior Art.  However, Plaintiff claims that the central structural element of the

8   preferred embodiment of the '413 patent was actually the "thickened central portion to the base of

9   the fixture housing adjacent the high voltage bulb" rather than the "air pathway."  Pl.'s Opp. to

10  Mot. 2:7-17.  Furthermore, according to Plaintiff, the '955 patent was filed in Plaintiff's

11  Information Disclosure Statement and it contained a pathway wherein "the flow of air through the

12  fixture is virtually the same as that exhibited by the invention of the '413 patent."  Pl.'s Opp. to

13  Mot. 14.  Indeed, Plaintiff claims that the only difference between the '955 patent and the '413

14  patent is the fact that the '413 patent included a "gap between the reflector flange and housing to

15  provide sufficient space to mechanically mount the cap" while "the '955 patent indicates it is

16  merely connected in a different manner."  *Id.*

17         Defendants counter that the '955 patent's air pathway contained only partial structural

18  elements of the "air pathway," while the Prior Art contained the "complete" structural elements

19  of the "air pathway".  In support of this contention, Defendants argue that, under the language of

20  the '413 patent, the primary purpose of the gap is to allow air flow, not simply to allow space to

21  secure the cap.  In sum, genuine issues of material fact remain as to whether the Prior Art

22  contains the more complete structural elements of the "air pathway" than the '955 patent.

23  Because the Prior Art cannot be summarily dismissed as cumulative, the Court now turns to the

24  alternate prongs of the materiality test.

25                        2. Arguments of Patentability Made by Plaintiff

26         Plaintiff notes that there were no arguments made by Plaintiff to the PTO during the

27  prosecution of the '413 patent application (rather, Plaintiff merely filed Amendments in response

28  to Office Actions issued by the PTO, which were limited to a clarification of the Plaintiff's

17

specification claims).  Pl.'s Opp. to Mot. 10.  However, Rule 56 does not pertain solely to arguments made to the PTO after an application has been submitted.  It also covers the claims contained in the patent application itself.  *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003)("When prosecuting claims before the Patent Office, a patent applicant is, at least implicitly, asserting that those claims are patentable.").  In this case, Defendant have not pointed to particular claims made by Plaintiff, either in its patent application or during patent prosecution, which "[o]ppos[e] an argument of unpatentability relied on by the Office."  37 C.F.R. § 1.56(b)(2)(i).  Therefore, the Court must merely analyze whether (1) the Prior Art refutes, or is inconsistent with, a position Plaintiff took in asserting an argument of patentability to the PTO and whether (2) the Prior Art, either by itself or in combination with other information, establishes a prima facie case of unpatentability.  37 C.F.R. § 1.56(b).  We turn first to the determination of whether the Prior Art refutes, or is inconsistent with, a position taken by Plaintiff in asserting an argument of patentability to the PTO.[5]  37 C.F.R. § 1.56(b)(2)(ii).

Defendants argue that Plaintiff "tout[ed] the ingenuity" of their invention in thirteen portions of the '413 patent by "emphasizing that their invention controls the heat by defining an 'air pathway' for cooler air to enter the fixture and heated air to exit the fixture."  Defs.' Mot. 7:28-8:26.  Because the Prior Art contained an "air pathway" for air to enter and exit, Defendants

---

[5]Plaintiff notes that there were no arguments made by Plaintiff to the PTO during the prosecution of the '413 patent application (rather, Plaintiff merely filed Amendments in response to Office Actions issued by the PTO, which were limited to a clarification of the Plaintiff's specification claims). Pl.'s Opp. to Mot. 10. However, Rule 56 does not pertain *solely* to arguments made to the PTO after an application has been submitted. It also covers the claims contained in the patent application itself. *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003)("When prosecuting claims before the Patent Office, a patent applicant is, at least implicitly, asserting that those claims are patentable."). In this case, Defendant has not pointed to particular claims made by Plaintiff, either in its patent application or during patent prosecution, which "(i) [o]ppos[e] an argument of unpatentability relied on by the Office. Therefore, the Court must merely analyze whether (1) the Prior Art refutes, or is inconsistent with, a position Plaintiff took in asserting an argument of patentability to the PTO and (2) the Prior Art, either by itself or in combination with other information, establishes a prima facie case of unpatentability. 37 C.F.R. § 1.56(b).

1   contend that the Prior Art is inconsistent with the position taken by Defendants during the patent

2   application.  As noted above, Plaintiff argues that the ingenuity of their invention stems not from

3   the "air pathway," but rather from the insulation materials and a thickened base portion, both of

4   which allowed the lighting fixture to withstand higher temperatures than low voltage lighting

5   fixtures. Thus, material facts remain as to whether the Prior Art is inconsistent with Plaintiff's

6   patent application.

7                                    3. Unpatentability

8           In order to establish a prima facie case of unpatentability in the instant case, the Prior Art

9   must have been "known or used by others in this country ... before the invention thereof by the

10  applicant for the patent, or ... in public use or on sale in this country, more than one year prior to

11  the date of the application for patent in the United States."  35 U.S.C. § 102(a) & (b).[6]  Further,

12  said requirements under §102 are met only when "a single Prior Art reference discloses each and

13  every element and limitation of the claims at issue."  *AgriChem, Inc. v. Loveland Industries, Inc*.,

14  843 F.Supp. 520 (D. Minn., 1994) aff'd 41 F.3d 1519 (Fed. Cir. 1994).  And yet, Defendants'

15  Prior Art reference does not include either "the thickened central portion of the base of the

16  housing or the insulation pads positioned intermediate the reflector and the back of the housing."

17  Pl.'s Opp. to Mot. 18.   Therefore, Defendants have failed to show that disclosure of the Prior Art

18  at issue would have resulted in a finding of unpatentability.

19                                    **(b.) Intent**

20          In this case, genuine issues of material fact remain as to both the materiality of the Prior

21  Art and Plaintiff's intent.  "Intent need not, and rarely can, be proven by direct evidence."  *Merck*

22  *& Co., Inc. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989).  Instead, intent is

23  _____

24          [6]Under 35 U.S.C. §103, an invention may also be found unpatentable if "the
        differences between the subject matter sought to be patented and the Prior Art are such

25      that the subject matter as a whole would have been obvious at the time the invention was
        made to any person having ordinary skill in the art to which said subject matter pertains."

26      However, the Prior Art does not contain either of the new structural elements added to the
        product patented under patent '413 (*i.e.*, a thickened central portion of the base of the

27      housing as well as insulation pads positioned intermediate the reflector and the base of the
        housing).

28

1  proven by "inferences from facts, with the collection of inferences permitting a confident

2  judgment that deceit has occurred."  *GFI, Inc. v. Franklin Corp*., 265 F.3d 1268, 1274 (Fed. Cir.

3  2001).  Even if it is shown that an applicant was grossly negligent in withholding information that

4  was material to patentability this "'does not of itself justify an inference of intent to deceive.'"

5  *Allen Engineering Corp. v. Bartell Industries, Inc*., 299 F.3d 1336, 1351 (Fed. Cir. 2002)(citing

6  *Kingston Medical Consultants, Ltd. v. Hollister Inc*., 863 F.2d 867, 876 (Fed. Cir. 1988)).

7       In this case Plaintiff clearly knew about the Prior Art as, near the time of the '413 patent

8  application, Benensohn was selling approximately 175,000 units of the Prior Art per month.  It is,

9  however, not clear that Plaintiff knew that the Prior Art was material.  The central issue that must

10  be resolved before a determination as to intent can be made is whether the "air pathway" is the

11  central structural element of the '413 patent and, therefore, whether the Prior Art was material.

12       Plaintiff asserts that the central structural element of the '413 patent is the thickened base

13  portion (as well as its use of certain insulation materials).  Thus, Plaintiff argues that it did not

14  deceive the patent examiner as it presented the PTO with the '955 patent - the most relevant

15  patent - as well as "samples of publications illustrating competitive products and a portion of the

16  packaging used with plaintiff's low voltage undercabinet lighting fixture."  Pl.'s Opp. to Mot.

17  19:16-19:18.  Additionally, Plaintiff notes that the patent examiner failed to discover any Prior

18  Art *relevant to such structural features*.

19       However, Defendants argue that Plaintiff's arguments are irrelevant, as (1) the central

20  feature of the '413 patent is its "air pathway" and (2) Plaintiff intentionally refrained from

21  presenting a structure containing the complete structural elements of the air pathway (*i.e.*, the

22  Prior Art) to the PTO.  If the central structural element of the '413 patent is indeed its air

23  pathway, it could fairly be concluded that Plaintiff's failure to disclose prior art – art that was not

24  only in Plaintiff's possession but also contained the complete structural elements of the "air

25  pathway" – was intentional.  Because the central structural element of the '413 patent cannot be

26  conclusively discerned from the Parties' papers, genuine issues of material fact remain as to

27  Plaintiff's intent.

28       **(c.) Outcome**

1   Defendants have not carried their burden to show that Plaintiff's actions constituted

2   inequitable conduct as to the '413 patent.  Defendants summary judgment motion as to the prior

3   test result is hereby DENIED.

4   **(2) Adverse Test Result**

5   Defendants argue that Plaintiff possessed, in addition to a Prior Art patent, an adverse test

6   result that they failed to disclose during the re-examination proceeding of the '413 Patent.

7   During the '413 patent invention process, models that lacked a "thickened plastic portion" in the "base

8   of the fixture housing" were tested ("Non-Thickened Base Models").  Benensohn admitted during his

9   deposition that the Non-Thickened Base Models did not work.  Defendants argue that Benensohn

10  withheld this "adverse test result" during the prosecution of the '413 patent, thereby "undermining" the

11  patentatibility of several of the '413 patent claims.  More specifically, Defendants argue that because

12  claims 13, 15, 16, 17, and 18 of the '413 patent did not include reference to a thickened base, said claims

13  were unpatentable.  However, Plaintiff argues that the adverse test result was included on page eight of

14  Plaintiff's patent, on the fourth line of Table 3.  Further, Plaintiff argues that this single adverse test result

15  would not caused the '413 patent to have total incapacity, as required by the Federal Circuit in order for

16  an invention to be deemed inoperable.  *Envirotech Corp. v. Al George, Inc*., 730 F.2d 753, 762 (Fed. Cir.

17  1984).  Because genuine issues of material fact remain as to whether an adverse test result was

18  improperly withheld, Defendants' motion for summary judgment fails.

19  **(3) Outcome**

20  For the reasons stated above, Defendants' motion for summary judgement for inequitable conduct

21  is hereby DENIED.

22

23  **IT IS SO ORDERED.**

24  **DATED: September 22, 2008**

25

26  _____
    **DAVID O. CARTER**

27  **United States District Judge**

28